

**RIVKIN RADLER**
ATTORNEYS AT LAW

WWW.RIVKINRADLER.COM

926 RXR Plaza
Uniondale, NY 11556-0926
T 516.357.3000 F 516.357.3333

JUSTIN A. CALABRESE
PARTNER
(516) 357-3565
justin.calabrese@rivkin.com

February 2, 2018

Honorable Cheryl L. Pollak
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    *Government Employees Insurance Co., et al. v. Lenex Services, Inc., et al.*
            Docket No. 16-cv-06030(LDH)(CLP)  (RR File No.: 5100-02270)

Dear Magistrate Judge Pollak:

We represent GEICO and submit this reply in further support of GEICO's motion to compel Defendants Alexander Blantz and Lenex Services, Inc. (the "Retail Defendants") and Igal Blantz and Gala Trading, Inc. (the "Wholesale Defendants") (collectively, the "DME Defendants") to produce certain corporate and financial records. See Docket Entry No. 70.

The DME Defendants' opposition grossly mischaracterizes facts, seeks to obfuscate the issues, and fails to contemplate that this is a discovery motion where relevancy is the standard – not the ultimate trial of the facts at issue. Moreover, the DME Defendants' opposition is heavily premised on cherry-picked portions of deposition transcripts not yet reviewed by the witnesses themselves. In fact, counsel for the DME Defendants is unwilling to even provide to GEICO a courtesy copy of the transcripts despite our request. In any event, the DME Defendants' gamesmanship does not change the clear conclusion that requested financial records are absolutely relevant and discoverable.

With respect to Plaintiffs' discovery motion, Plaintiffs set forth a detailed explanation of the allegations and claims asserted, along with numerous cases in this District that specifically permitted discovery of both corporate financial information and personal financial information of defendants in very similar No-Fault insurance fraud cases. *Tellingly, the DME Defendants exceed the page limit for letter opposition but nowhere bother to address the governing case law whatsoever.* See e.g., State Farm Mut. Auto. Ins. Co. v. Fayda, 2015 U.S. Dist. LEXIS 162164, *13, 2015 WL 7871037); State Farm Mutual Automobile Insurance Co. v. McGee, No. 10 CV 3848, 2012 U.S. Dist. LEXIS 188346, 2012 WL 8281725, at *2 (E.D.N.Y. Feb. 21, 2012); State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., 375 F.Supp. 2d 141, 156 (E.D.N.Y. 2005); Allstate Ins. Co. v. Elzanaty, 2012 U.S. Dist. LEXIS 171962 (E.D.N.Y. 2012); State Farm Mut. Auto. Ins. Co. v. Tabakman, 2008 U.S. Dist. LEXIS 77784, 2008 WL 4527731 (E.D.N.Y. 2008); Government Employees Ins. Co. v. Fritz Gondre, MD, Index. No. 07957/16 (Sup. Ct. Nassau Cty. May 19, 2017).

Defendants, knowing full well that the governing case law supports the relevancy of the financial records, resort to disputing the ultimate merits of Plaintiffs' case by contorting and mischaracterizing the evidence and discovery obtained to date. Notwithstanding the efforts by the DME Defendants to

February 2, 2018
Page 2 of 4

"try" the case at this juncture, GEICO's Complaint includes detailed allegations regarding the DME Defendants' participation in a RICO conspiracy, involving fraudulently inflated wholesale invoices; a collusive/sham relationship between DME retailer and wholesaler, and the payment of "kickbacks" to various multi-disciplinary medical clinics in exchange for medically unnecessary DME prescriptions. See Docket No. 1, passim. While the DME Defendants try to confuse the evidence, it is undisputed that Alexander Blantz turned much of the insurance company monies into cash by funneling approximately $2 million of insurance company monies to the Wholesale Defendants, which monies were then funneled back to Alexander Blantz, through hundreds of small "advances" and corresponding "payments" (mostly under $10,000.00 each) using a sham line of credit with Bank of America. (See sample checks/statements annexed as Exhibit "5" to GEICO's underlying motion at Docket No. 70.) More specifically, rather than directly transferring the insurance monies to himself and others, Alexander Blantz used virtually all insurance monies to purchase DME from the Wholesale Defendants. Igal Blantz then wrote hundreds checks paying down the line of credit – monies which were contemporaneously transferred out of the line of credit account by Alexander Blantz to himself and other unknown accounts and recipients. Without question, GEICO's allegations in the Complaint, the evidence of forged/fraudulent prescriptions and the bank records obtained to date are indicia of a fraudulent scheme and financial records sought will shed light on the extent of that scheme.

As stated in GEICO's underlying motion, the requested corporate income and payroll tax returns are clearly relevant to Plaintiffs' claims. The corporate tax returns will demonstrate, among other things, how the DME Defendants treated the financial transactions among themselves; whether the Retailer-Wholesaler relationship was a sham or a bona-fide relationship; how (if at all) the Wholesale Defendants classified payments (e.g., consulting fees) to the line of credit account; and whether Gala had any legitimate business purpose other than to be used by the Retail Defendants as a vehicle through which the Retail Defendants could inflate charges and facilitate kickbacks with the Clinics. Although the DME Defendants assert that Gala was a legitimate business because it had multiple customers, the bank records indicate that Gala had only two additional customers who made a total of 26 purchases totaling $157,625 spanning short periods of time – far less than the $2.2 million paid by the Retail Defendants since the two entities embarked on their fraudulent venture.[1]

Rather than advancing any colorable legal arguments to oppose GEICO's motion, the DME Defendants instead divert attention to unverified transcript excerpts of the depositions of GEICO Investigator, Theresa Sarlo ("Sarlo") and Shaikh Ahmed, M.D. ("Dr. Ahmed"). Although counsel for the DME Defendants has refused to provide a complete copy of the Sarlo transcript, the portions submitted by the DME Defendants as exhibits to their opposition nevertheless demonstrate that they have grossly mischaracterized testimony. For example, while Sarlo testified that her duties included detecting and deterring fraud, Sarlo <u>clearly and repeatedly testified</u> that she does not make determinations of whether fraud exists, but merely whether indicia of fraud exists (Tr. Sarlo 43:6-25) –

---

[1] In fact, each other customer is currently named a Defendant in two distinct actions currently pending before this Court. See <u>Allstate Insurance Company, et. al v. Avetisyan, et. al</u>, 17-cv-04275-LDH-RML and <u>Government Employees Insurance Company et al v. All Points Medical Supply, Inc. et. al</u>, 17-cv-07340-ARR-JO. Both cases allege the perpetration of and participation in No-Fault fraud schemes involving the sale of DME.

a valid reason as to why GEICO's SIU reports, which were prepared before filing this case, did not definitively state that the DME Defendants committed fraud. (Tr. Sarlo 182:11-16, 183:1-3). Similarly, Sarlo <u>did not testify</u> that there was no evidence of kickbacks, but rather, that during GEICO's pre-litigation investigation, no one overtly expressed to her that the DME Defendants paid kickbacks for the prescriptions that supported their fraudulent claims (Tr. Sarlo 216:7-25, 217:2) – not surprising considering the pervasive nature of the fraudulent scheme. Additionally, the fact that GEICO did not utilize a handwriting or DME expert during its investigation is in no way demonstrative that the DME Defendants have clean hands. The clear photocopied signatures on the prescriptions, the manner in which DME was prescribed, her past investigations into companies like the DME Defendants that also sold poor-quality products and the other evidence obtained during the investigation were enough for Sarlo to conclude that *indicia* of fraud exists (all to which she <u>did</u> testify) – consistent with her duties as an Investigator. Relevant portions of the Sarlo transcript which Plaintiffs were able to scavenge from the incomplete transcript offered by the DME Defendants are annexed as Exhibit "1". Finally, Sarlo's duties were limited to investigations, thus any attempt by the DME Defendants to mischaracterize her testimony to establish why GEICO made certain claims decisions are (i) outside the scope of her knowledge; (ii) irrelevant to whether indicia of fraud exists and (iii) irrelevant to GEICO's demand for financial records.

Similarly, the DME Defendants' reference to and mischaracterization of Dr. Ahmed's unverified deposition transcript is irrelevant to GEICO's motion to compel financial records. First, *Dr. Ahmed was represented by his own counsel both when he met with Plaintiffs' counsel and when he signed the affidavit.* While Dr. Ahmed testified he did not "recall" seeing his Affidavit prior to the deposition, it is unclear whether Dr. Ahmed did not recall reviewing the Affidavit in preparation for the deposition or whether he never reviewed the Affidavit prior to signing it in 2016. In fact, Dr. Ahmed testified that (i) he is "very dumb when it comes to legal documents"; (ii) there are a lot of "legal terms" being used which he did not understand; (iii) the Affidavit, Complaint and other documents presented to Dr. Ahmed "all look alike" (Tr. Ahmed 175:124,125, 17:2-10); (iv) he may have reviewed rough drafts of the Affidavit before signing the Affidavit (Tr. Ahmed 90:14-24) and (v) he did not recall how much time he spent reviewing the Affidavit before signing it (Tr. Ahmed 91:4-7) (implying that Dr. Ahmed did review the Affidavit before signing it). Interestingly, the DME Defendants fail to reference the portions of the transcript wherein Dr. Ahmed testified that the medical office had pre-established treatment protocols that were assigned to him (Tr. Ahmed 70:3-21) and after he gave the prescriptions to the front desk, he never again saw them – not even in the patient files (Tr. Ahmed 76:11-20, 77:11-25, 77:2-4). Dr. Ahmed's transcript is annexed as Exhibit "2".

Regarding the equipment itself, the DME Defendants ignore Dr. Ahmed's testimony wherein he stated that (i) he did not know what a "Tens Unit" was (Tr. Ahmed 130:2-3); (ii) he did not know what a "thermophore" was (Tr. Ahmed 133:2-8), (iii) he would never prescribe "custom LSOs" because he was not even familiar with them (Tr. Ahmed 139:11-25, 140:2); (iv) he never regularly prescribed "custom knee braces" because they were not medically necessary in most cases (Tr. Ahmed 149-154:19); and (v) he did not know what "cervical traction" was and never prescribed the litany of products for which the DME Defendants (and others) billed GEICO (Tr. Ahmed 155:6-25). Additionally, Dr. Ahmed testified that he had no reason to suspect that from 2014-2016 his

February 2, 2018
Page 4 of 4

prescriptions were being forged (Tr. Ahmed 160:10-21) (because the prescriptions never made their way into the patient files) – and whether Dr. Ahmed failed to report to law enforcement, fraud he never suspected in the first instance is again, completely irrelevant to GEICO's request for financial records in this matter. See Exhibit "2".

Finally, any argument that the financial records requested by GEICO are "sensitive" or "quasi-privilege" is completely absurd for various reasons. First, the parties entered into a confidentiality agreement which prohibits the dissemination of information outside the parameters of this case. See e.g., Fayda, 2015 U.S. Dist. LEXIS 162164, at * 16 (holding that privacy concerns did prevent discovery of relevant personal financial information since there was in place a protective order). Furthermore, the key case cited by Defendants, Trs. of the N.Y. City Dist. Council of Carpenters Pension Fund v. Halcyon Constr. Corp., 2015 U.S. Dist. LEXIS 149103, 2015 WL 6509022 (dealing with employer contributions and scope of discovery), does not support Defendants' contention. The Carpenters court concluded that the information was not "quasi-privilege" or "private" because (i) there was a compelling need for the information and (ii) the personal information contained in employee files was already deemed confidential. Id. at *3-4. The Fayda Court, in fact, easily distinguished Carpenter's ruling that personal tax returns and other financial information was discoverable where an insurer uncovered evidence of complex financial transactions that could have been used to conceal assets or income. Supra. at *13. Additionally, in Dunkin' Donuts Franchised Rests. LLC v. Grand Cent. Donuts, Inc., 2009 U.S. Dist. LEXIS 15579, 2009 WL 511281, the Court dealt with tax returns of *non-parties* and whether the relevance of the information sought and a compelling need for the information outweighed disclosure of a non-parties' personal financial information. Here, the DME Defendants are parties to the action and as repeatedly demonstrated, the information sought is directly relevant to GEICO's claims in this case.

The DME Defendants' opposition to GEICO's motion to compel largely focuses on what Sarlo and Dr. Ahmed purportedly did not do – completely ignoring what the evidence to date demonstrates the DME Defendants did do – perpetrate and participate in a complex scheme to defraud GEICO. As such, the Court should compel the DME Defendants to provide the financial records requested.

Respectfully submitted,

RIVKIN RADLER LLP

*Justin A. Calabrese*

Justin A. Calabrese

3898252 v4