UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
GOVERNMENT EMPLOYEES INSURANCE
CO.,

                           Plaintiff,

                 -against-

LENEX SERVICES, INC., et al.,

                         Defendants.
-------------------------------------------------------- X

**ORDER**

16 CV 6030 (LDH) (CLP)

**POLLAK**, United States Magistrate Judge:

        On October 31, 2016, plaintiff Government Employees Insurance Company, et al

("GEICO"),[1] commenced this action against Lenex Services, Inc. ("Lenex"), Gala Trading Inc.

("Gala"), Alexander Blantz ("A. Blantz") and Igal Blantz ("I. Blantz"), alleging various claims

of civil RICO, common law fraud, and unjust enrichment, based on defendants' claims for

reimbursement from GEICO for durable medical equipment and orthotics (together "DME") that

was allegedly supplied to patients covered by GEICO's No-Fault automobile policies.  Plaintiff

alleges that Lenex, which is owned by A. Blantz, generated fraudulent claims to GEICO through

forged prescriptions for DME, and falsely represented that Lenex purchased DME from

legitimate wholesalers, when in fact, A. Blantz and I. Blantz conspired to incorporate Gala to sell

cheap, poor quality DME to Lenex.

        Currently before this Court are several discovery motions: 1) GEICO's motion for a

protective order in connection with the defendants' Notice of Deposition Pursuant to Fed. R. Civ.

P. 30(b)(6); 2) GEICO's motion to quash the deposition notices of two non-party witnesses,

Louis Caniglia, Jr.,  and  Louis Caniglia, Sr., on the grounds that defendants are attempting to

---

[1] Although the case is brought in the name of Geico Employees Insurance Company, Geico
Indemnity Company, Geico General Insurance Company, and Geico Casualty Insurance
Company, the Court refers to the plaintiff as "GEICO."

obtain the same information sought in the 30(b)(6) Notice, and because they seek information

that "is completely irrelevant to this lawsuit" (1/3/18 Mot.);[2] 3) GEICO's motion to compel

defendants to produce certain financial records; and 4) GEICO's motion to enforce a subpoena

for the deposition of Moises Mizrahi.  For the reasons set forth below, plaintiff's motions are

granted in part and denied in part.


DISCUSSION

A.  Legal Standards

    a.  Protective Orders and Motions to Compel

The Federal Rules of Civil Procedure grant parties in lawsuits broad rights to discovery.

See Fed. R. Civ. P. 26(b).  Parties are entitled to discovery for any "nonprivileged matter that is

relevant to any party's claim or defense . . . "  Fed. R. Civ. P. 26(b)(1).  Discoverable materials

"need not be admissible at the trial if the discovery appears reasonably calculated to lead to the

discovery of admissible evidence."  Id.  The language in Rule 26(b)(1) is construed "broadly to

encompass any matter that bears on, or that reasonably could lead to other matter that could bear

on, any issue that is or may be in the case."  Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340,

351 (1978).  Indeed, materials that are inadmissible under the Federal Rules of Evidence may

still be discoverable if a "minimal showing of relevance" is made.  Rates Tech., Inc. v.

Cablevision Sys. Corp., No. 05 CV 3583, 2006 WL 3050879, at *3 (E.D.N.Y. Oct. 20, 2006).

Thus, a party seeking discovery "must [at least] make a prima facie showing[] that the discovery

sought is more than merely a fishing expedition."  Evans v. Calise, No. 92 CV 8430, 1994 WL

185696, at *1 (S.D.N.Y. May 12, 1994) (citing Abu–Nassar v. Elders Futures Inc., No. 88 CV

---

[2] Citations to "1/3/18 Mot." refer to the Letter Motion to Quash Subpoena, filed by GEICO on
January 3, 2018.

7906, 1991 WL 45062, at *15 (S.D.N.Y. March 28, 1991); Samuels et al. v. Beheer, 500 F. Supp. 1357, 1362 (S.D.N.Y. 1980); Contemporary Mission, Inc. v. United States Postal Service, 648 F.2d 97, 107 (2d Cir. 1981)).  The decision whether to grant a motion to compel such discovery resides within the sound discretion of the district court.  In re Fitch, Inc., 330 F.3d 104, 108 (2d Cir. 2003) (citing United States v. Sanders, 211 F.3d 711, 720 (2d Cir. 2000)).

Nonetheless, "district courts are empowered to issue protective orders to temper the scope of discovery."  AMW Material Testing, Inc. v. Town of Babylon, 215 F.R.D. 67, 72 (E.D.N.Y. 2003) (citing Dove v. Atlantic Capital Corp., 963 F.2d 15, 19 (2d Cir. 1992) (finding that "the grant and nature of protection is singularly within the discretion of the district court")).  Where a party requesting a "protective order demonstrates good cause, 'the court in which the action is pending . . . may make any order which justice requires [in order] to. . .[avoid] annoyance, embarrassment, oppression, or undue burden or expense.'"  Id. (quoting Fed. R. Civ. P. 26(c)(4).  This includes a determination "'that certain matters not be inquired into, or that the scope of . . . disclosure or discovery be limited to certain matters.'"  Id.  Such a showing of good cause requires that "particular and specific facts . . . be established;" conclusory assertions are not enough.  Id.  (citing Hasbrouck v. Bank Am. Hous. Serv., 187 F.R.D. 453, 455 (N.D.N.Y. 1999)).  As with all matters of discovery, the district court is required to balance "the importance of the discovery in resolving the issues" and "whether the burden or expense of the proposed discovery outweights its likely benefit."  See Fed R. Civ. P. 1.


   b.  Rule 30(b)(6) Expert Testimony

A Rule 30(b)(6) deposition notice, like other forms of discovery, is subject to the limitations under Rule 26, described above.  Federal Rule of Civil Procedure 30(b)(6) requires a corporation to "respond to a notice for a deposition on a particular subject matter by providing

such 'persons' as are knowledgeable about the subject matter.'" <u>Reilly v. Natwest Markets Grp.</u> <u>Inc.</u>, 181 F.3d 253 (2d Cir. 1999). A Rule 30(b)(6) notice of deposition must "describe with reasonable particularity the matters for examination." <u>See</u> Fed. R. Civ. P. 30(b)(6); <u>Keepers, Inc.</u> <u>v. City of Milford</u>, 807 F.3d 24, 36-37 (2d Cir. 2015). Questions and answers exceeding the scope of the 30(b)(6) notice will not bind the corporation. Instead, they are treated as the answers of the individual deponent. <u>See, e.g.</u>, <u>Falchenberg v. New York State Dept. of Educ.</u>, 642 F. Supp. 2d 156, 165-166 (S.D.N.Y. 2008).


B.   <u>The September 13, 2017 30(b)(6) Notice</u>

On September 13, 2017, defendants served GEICO with a Notice of Deposition, pursuant to Rule 30(b)(6), listing 17 separate areas of inquiry and eight (8) separate document requests. Following a meet and confer between the parties, defendants served what GEICO has characterized as a "virtually identical" Rule 30(b)(6) notice, which contains a number of topics that were previously rejected or modified by the Honorable Roanne Mann, Chief Magistrate Judge, in a similar No-Fault case brought by Allstate Insurance Company. <u>Allstate Ins. Co. v.</u> <u>Art of Healing, P.C.</u>, No. 15 CV 3639 (E.D.N.Y. 2014). (<u>See</u> Pl.'s Mem.[3] at 4).

In responding to GEICO's motion for a protective order, defendants set forth several general arguments regarding the relevance and need for the discovery that they seek in the proposed topics for a Rule 30(b)(6) witness. (Defs.' Mem.[4] at 9-15). Specifically, defendants deny GEICO's allegations that Lenex engaged in a fraudulent scheme, and they dispute

---

[3] Citations to "Pl.'s Mem." refer to GEICO's Memorandum of Law in Support of its Request for a Protective Order in Connection with Defendant's Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6), filed December 4, 2017.
[4] Citations to "Defs.' Mem." refer to the Memorandum of Law in Opposition to Plaintiff's Motion for a Protective Order, dated December 11, 2017.

GEICO's claim that evidence disclosed in discovery to date provides support for GEICO's "venomous," "outrageous and absurd" allegations. (Id. at 7). Defendants assert that the information they seek in their Rule 30(b)(6) deposition notice is relevant and may lead to the discovery of admissible evidence. (Id. at 9).

Defendants point to a lawsuit brought against GEICO and Louis M. Caniglia, Sr., among others, by some of GEICO's own Special Investigations Unit ("SIU") investigators who were involved in investigating the defendants in this case. (Id. (citing McDonagh v. GEICO, No. 17 CV 391 (D. Md. 2017); Calderon v. GEICO, No. 10 CV 1958, 917 F. Supp. 2d 428 (S.D. Md. 2012); and Vetter v. GEICO, 13 CV 642 (D. Md. 2013))). According to defendants, the investigators who brought these lawsuits allege that GEICO "willfully, and recklessly conducted itself 'in bad faith,' has 'failed to accurately record, report, and/or preserve' records," and that the investigators were often required to investigate claims that are "merely 'questionable,' or merely 'suspect' claims, as well as 'fraudulent activity.'" (Id. at 9).

Defendants argue that they should be entitled to examine GEICO's Rule 30(b)(6) witness about GEICO's SIU practices, protocols and guidelines, and explore GEICO's resources and procedures devoted to claim verification and fraud detection. (Id. at 11). Defendants further contend that while GEICO's Complaint alleges fraud on behalf of defendants, what it "speaks more reasonably to, is GEICO's own failure to undertake its own claims/verification/investigation procedures and to properly advise claimants as to what information GEICO was and was not requiring at its claims stage." (Id.) Defendants note that GEICO uses various vendors as part of its claims process, and therefore, maintain that the identities of those vendors and their relationship with GEICO—including how the bills at issue here were determined to be paid—are relevant as well. (Id. at 12). Finally, defendants argue that they are entitled to discovery that supports their affirmative defenses, including their statute of

limitations defense – namely, if there were "storm warnings" that should have alerted GEICO to the alleged fraud—and the affirmative defenses of GEICO's own misrepresentations, fraud, unclean hands, estoppel, and res judicata. (Id. at 13-14).

The Court addresses each disputed topic below.

1. <u>Topic No. 1</u>

GEICO objects to Topic No. 1 of defendants' request which seeks "[a]ll matters alleged by the several Plaintiff within the Complaint in this action, including all matters within the Plaintiff's claim files, billing files, and SIU files." (Pl.'s Mem. at 6). GEICO indicates a willingness to produce a witness who has knowledge of GEICO's investigation of the defendants and the facts alleged in the Complaint, but objects to the request to the extent that it asks for "all matters within [GEICO's] claim files, billing files and SIU files," as overly broad, vague and without sufficient particularity. (Id.) Moreover, GEICO asserts that it is improper to require GEICO to marshal all of the evidence supporting its legal theories instead of seeking testimony into the facts underlying the allegations. (Id.)

The case law is clear that Rule 30(b)(6) depositions are intended to discover the facts, and it is improper to use a Rule 30(b)(6) deposition to ascertain how a party intends to marshal the facts and support its legal theories. See SEC v. Morelli, 143 F.R.D. 42, 47 (S.D.N.Y. 1992); see also Liveperson, Inc. v. 24/7 Customer, Inc., No. 14 CV 1559, 2015 WL 4597546, at *7 (S.D.N.Y. July 30, 2015); Nycomed U.S. Inc. v. Glenmark Generics Ltd., No. 08 CV 5023, 2009 WL 346912, at *1 (E.D.N.Y. Oct. 21, 2009). The Court agrees with plaintiff that the first topic, as currently worded, is vague and seems to seek testimony on matters not at issue in this case— "all matters" within plaintiff's files, not even limited to files relating to defendants' claims. This is patently improper. If defendants are willing to accept GEICO's proposal to produce a witness

with knowledge of the defendants and the facts underlying the Complaint, then the parties should proceed. Otherwise, the Court grants GEICO's motion for a protective Order and strikes defendants' first topic.

### 2. Topic No. 2

Defendants' Topic No. 2 is equally problematic in that it seeks testimony about "[a]ll factual matters which support a real defense to the action or support affirmative defenses []." (Pl.'s Mem. at 7). Apart from the fact that it is unclear what is meant by the term "real defense," as with Topic No. 1, the request seems to require GEICO to marshal the evidence that GEICO believes constitutes or supports any potential defense to the allegations in the Complaint. The Court finds that Topic No. 2 is improper, and accordingly grants GEICO's motion to strike Topic 2 in its entirety.

### 3. Topic Nos. 4, 5, 12, 13

GEICO objects to defendants' Topic Nos. 4, 5, 12, and 13 on the grounds that they are overly broad and burdensome. (Id. at 8).

Topic No. 4 seeks a 30(b)(6) witness who can testify about the identity, job functions, education, certifications, and licenses of "all former and current employees and/or independent contractors . . .who took part in the claims stage and/or review of the bills at issue in this case and the investigation into the defendants." (Id.) Topic No. 5 seeks someone who can testify about the "creation and compliance with procedures and protocols with respect to the handling and claims processing of billing received" for DME and all "reports, memorandum, guidelines," as well as the titles and duties of all employees responsible for creating and ensuring compliance with these guidelines and protocols. (Id.)

Topic No. 12 seeks the identity and contents of all claimants' files, and Topic No. 13 seeks the identity and "relationship" with all vendors who review bills and records pertaining to the bills submitted by defendants relating to DME.  (Id.)

With respect to GEICO's objections to Topic Nos. 4, 5, 12, and 13 as overbroad and unduly burdensome, defendants argue that even though GEICO is claiming that it was defrauded, it resists disclosure and examination of the "sophistication" of its personnel and vendors who review the bills.  (Defs.' Mem. at 16).  Defendants argue that the creation of GEICO's protocols and procedures is "at the heart of the matter in this case."  (Id.)  Defendants argue that the "believability" of these "alleged expert Vendors" and whether they "could really have been 'duped'" is highly relevant.  (Id. at 16).

When confronted with a similar Rule 30(b)(6) request in a case against Allstate, Chief Magistrate Judge Mann narrowed the request seeking information similar to Topic Nos. 4 and 5 to a request for a 30(b)(6) witness who could testify to procedures and protocols for claims processing and the general training of claims adjusters.  (See Sirignano Decl.,[5] Ex. F., at 42:25-51:1).  The Court noted that interrogatories are a more appropriate mechanism for seeking the identity of all individuals and their job functions, rather than asking a 30(b)(6) witness to somehow memorize their names and curriculum vitae.  (Id. at 43-44).  See also Dealer Computer Servs. v. Curry, No. 12 CV 3457,  2013 WL 599520, at *4 (S.D.N.Y. Feb. 7, 2013) (directing plaintiff to serve interrogatories for information such as the title, position, responsibility of officers, directors and employees).

Having considered the parties' arguments, the Court grants GEICO's request to limit Topic Nos. 4 and 5 to a witness who can testify about procedures and protocols relating to claims

---

[5] Citations to "Sirignano Decl." refer to the Declaration of Michael A. Sirignano, affixed to Pl.'s Mot., dated December 4, 2017.

submitted by Lenex and to the general training for claims adjusters and the investigation into

defendants. With respect to Nos. 12 and 13, those are to be similarly limited to the general

contents of claims files at issue in this case and the general procedures relating to the use of third

party vendors to conduct the bill review of Lenex's bills for DME.


    4.   <u>Topic No. 6</u>

    Topic No. 6 requests a witness to testify about the corporate structure, financing,

ownership, management, and corporate operations of GEICO.[6]

    With respect to GEICO's objection to Topic No. 6, defendants contend that "GEICO

misunderstands the nature of this lawsuit." (Defs.' Mem. at 16). Specifically, defendants argue

that inquiry into the ownership, structure and management of a corporation is relevant when "its

own employees, SIU Investigators, are claiming that it engages in a pattern of failing to

accurately record, report, and/or preserve records. . . ." (<u>Id.</u>) Similarly, defendants argue that

GEICO's finances are relevant to determining whether GEICO was truly defrauded in this case.

(<u>Id.</u>)

    Here, the plaintiff's claims relate to a fraudulent scheme perpetrated by defendants.

Although defendants claim in other responses that SIU investigators themselves alleged that

GEICO engages in a pattern of failing to report its records, impliedly referring to a series of

unrelated FLSA cases in the district court in Maryland, these FLSA claims have nothing to do

---

[6]Chief Judge Mann rejected a similar request in <u>Art of Healing</u>, questioning the relevance of such requests to the claims in the case. Specifically, the court noted that "I don't know why you need corporate structure, financing, ownership, management and corporate operations beyond [procedures and protocols with respect to the handling and claims processing of billing]." (Sirignano Decl., Ex. F, at 51:14-51:18). As to the procedures and protocols with respect to the handling and claims processing, the Court finds this duplicative of other requests. (<u>See</u> discussion <u>supra</u>, at 8 (discussing Topic Nos. 4 and 5)).

with the ownership, management and financial stability of GEICO.  The circumstances of those cases center around whether GEICO properly classified the investigators as exempt independent contractors and whether the company failed to maintain the types of records of wages and hours required for employees under the FLSA.[7]  Indeed, the "records" to which these unrelated allegations describe are *time records* that GEICO might or might not have kept pursuant to its duties as an employer under an entirely unrelated statute.   Apart from the fact that these cases have nothing to do with the case at hand, defendants have failed to advance any basis for the relevance of this information.  Accordingly, the Court grants GEICO's motion to strike Topic No. 6 in its entirety.

5.   Topic No. 9

GEICO objects to defendants' Topic No. 9, which seeks a witness to testify regarding "[p]laintiffs' policies, procedures, practices, budget, expenses and disbursements, including payment protocols, investigatory protocols, relating to claims processing and investigations." (Pl.'s Mem. at 11).  Plaintiff asserts that because there is no time limit to the inquiry and it is not limited to the claims in this case, but arguably seeks information about other providers, it will not lead to the discovery of admissible evidence.  (Id.)

Defendants, on the other hand, contend that GEICO has both a "payment protocol" and an investigatory protocol.  (Defs.' Mem. at 17).  Defendants argue that if GEICO failed to comply with these protocols, it cannot claim that it was defrauded.  (Id.)

---

[7] To the extent that the pleading in the District of Maryland cases use terms such as "willful" or "bad faith," the Court agrees with GEICO that the purpose of these allegations for FLSA statute of limitations purposes is "irrelevant to any defendants in [the instant action] or to GEICO's investigations."  (See 1/3/18 Mot. at 2 n.1).

GEICO also objects to the request for plaintiff' "budget, expenses, and disbursements" relating to claims processing and investigations. (Id. at 12). In the Art of Healing case, Chief Judge Mann limited the inquiry to the general procedures and practices relating to the claims at issue there for the relevant time period.[8]

Since defendants have failed to explain why a similar limitation would not be appropriate here, the Court grants GEICO's request to limit Topic No. 6 to general procedures and practices relating to the protocols for claims processing for DME during the period alleged in the Complaint, between 2014 and the present. The request for a 30(b)(6) witness to testify about GEICO's budgeting and expenses is stricken.

6. Topic Nos. 7, 8 and 11

Defendants have asked for a 30(b)(6) witness to testify about GEICO's financial records, including tax returns, ledgers, balance sheets (Topic No. 7); about the "[r]evenue and expense records" related to "any collateral sources for the amounts claimed as damages, including premiums for reinsurance (Topic No. 8); and about GEICO's "relationship" with any bank that was used to issue checks to pay for No-Fault benefits, including the signatories and "the types and amounts of transactions executed on Plaintiff' bank accounts" as related to the damages claimed. (Topic No. 11). (See Pl.'s Mem. at 12-13).

---

[8] Defendants contend that Judge Mann's decision in the Art of Healing case did not deal with such claims and involved a different insurance company, Allstate. (Id.) Defendants further contend that plaintiffs' counsel makes "repeated (and unjustified) reference" to the Art of Healing case. However, this Court is persuaded by Judge Mann's logic in limiting the substantially-similar, if not exactly the same, requests brought by opposing counsel in these similar no-fault insurance cases.

GEICO objects on grounds of overbreadth, burden and relevance. GEICO has indicated that it will produce a 30(b)(6) witness capable of testifying about the losses suffered as a result of defendants' conduct, but argues that its financial records and tax returns are irrelevant and the request is a fishing expedition. (Id.)

As to Topic Nos. 7, 8, 11, defendants argue that GEICO cannot recover damages under RICO if such amounts were recovered prior to the lawsuit. (Defs.' Mem. at 17). Defendants argue that if plaintiff recovered its losses through a collateral source prior to commencing this action, then the RICO action must be dismissed. (Id.) Similarly, without further explanation, defendants argue that the bank signatories and signatory protocols for issuing checks are relevant if the protocols were not followed. (Id. at 18).

The law is well established that "a tortfeasor is not entitled to use a plaintiff's settlement with collateral sources of payment to avoid liability for damages." Thyssen, Inc. v. S/S Euronity, 21 F.3d 533, 537-38 (2d Cir. 1994); see also N.Y. Mercantile Exch. v. Verrone, No. 96 CV 8988, 1998 WL 811791, at *1 (S.D.N.Y. Nov. 19, 1998) (holding that "damages cannot be offset by payments received by the injured party from a source independent of the wrongdoer, such as insurance payments"). The defendants' misreading of the case law on collateral sources does not justify the overly broad inquiry that they seek to pursue in Topic Nos. 7, 8 and 11, and the Court therefore limits the inquiry to questions relating to the damages suffered by GEICO as a result of defendants' alleged conduct.

7. Topic No. 10

Defendants have requested a 30(b)(6) witness to testify about GEICO's record keeping practices, including the destruction of plaintiff' tax returns, bank records and other records relating to corporate revenue, expenses and losses. With respect to GEICO's objection to Topic No. 10 as overbroad, burdensome and irrelevant, defendants assert that the company's record keeping and document retention policies are highly relevant because its own investigators are alleging that GEICO fails to record, report and maintain documents. (Defs.' Mem. at 18).

As noted earlier, GEICO's bank records and tax returns are not relevant to the claims or defenses in this case and the burden of requiring a witness to become familiar with such a broad range of information is not proportional to the needs of the case in the absence of a showing of relevance. To the extent that defendants seek to limit the inquiry, as Judge Mann did in the <u>Art of Healing</u> case, to GEICO's "document retention policies with respect to specific documents you believe should have been produced," the Court will allow that inquiry to proceed but otherwise grants GEICO's motion for a protective order insofar as Topic No. 10 seeks record-keeping practices generally related to "financial records, including Plaintiff' bank records, tax returns [and] balance sheets."

8. <u>Topic No. 14</u>

Defendants seek a witness who can testify about the facts and circumstances "surrounding any investigation wherein any of the Plaintiff were investigated by any governmental authority for bad faith insurance practices," including regulatory proceedings, lawsuits, where GEICO either alleged fraud or theft against another party or where GEICO was alleged to have engaged in fraud, theft or bad insurance practices. GEICO objects on the grounds that there is no specificity whatsoever in this request in either geographic or temporal limitation and there is no relevance to the case at hand. (Pl.'s Mem. at 16).

Defendants argue that Topic No. 14 requesting governmental investigations into GEICO for bad faith may be relevant to show a pattern on behalf of GEICO to misrepresent the facts here or to falsely claim fraud in order to avoid paying over $1,000,000 in claims. (Defs.' Mem. at 19).

This explanation is woefully inadequate to justify an unlimited fishing expedition into lawsuits brought by private parties alleging fraud or "bad insurance practices" against GEICO, going back indefinitely in time with no showing of relevance. Moreover, to the extent that the request seeks to inquire into any lawsuits where GEICO was the party "alleging fraud or theft," defendants have failed to explain why that information would be relevant here. GEICO's motion for a protective order as to Topic No. 14 is granted.

9.  Topic Nos. 15, 16

Defendants seek a 30(b)(6) witness who can testify as to the equipment used by plaintiff to test DME (Topic 15) and the results of such testing (Topic 16). (Pl.'s Mem. at 16). GEICO claims that it is uncertain what type of equipment defendants are referring to and whether the request is limited to the testing performed on Lenex DME. (Id. at 17). Furthermore, GEICO objects to any inquiry regarding consultants that plaintiff may or may not use as experts at trial. (Id.)

As for Topic Nos. 15 and 16,[9] defendants note that one of GEICO's claims is that the DME here was "counterfeit" or of cheap and inferior quality. (Defs.' Mem. at 19). Defendants argue that if GEICO did not test this DME to determine that it was counterfeit or of inferior

_____

[9] In their Memorandum, defendants correct a typographical error in their request for Topic No. 16. (Defs.' Mem. at 20). Instead of seeking someone to testify about "Plaintiff' evaluation(s) of the techniques used by employees and/or independent contractors of the Defendants. . ." the Topic seeks the evaluation of employees and/or contractors employed by GEICO. (Id.)

quality, the witness can testify to that; if it was tested, defendants argue then that it is not a matter of expert testimony and should be the subject of proper inquiry at this time.  (Id.)

The Court grants GEICO's request to limit these topics to an inquiry into the circumstances surrounding GEICO's investigation and testing of the DME in this case that was dispensed by Lenex.

## C.  Document Requests

GEICO objects to the document requests in the Revised Notice on the grounds that they duplicate many of the defendants' prior Fed. R. Civ. P. 34 document requests and are objectionable on grounds of vagueness, overbreadth, and relevance.  (Id. at 17).  GEICO contends that defendants have not even reviewed the claims files and documents already produced, "wasting the resources of GEICO and the Court."  (Id.)

To the extent that GEICO has raised objections to defendants' request for documents, defendants contend that they are entitled to production of:  1) GEICO's policies, practices and protocols for payment and review of No-fault bills for DME; 2) documents as to GEICO's position when it paid the defendants' bills; 3) the investigatory files of the other defendants in this case; 4) GEICO's tax documents reflecting losses claimed in this case which may show prior inconsistent statements by GEICO; and 5) GEICO's reinsurance policies to establish set-off as a defense to RICO.  (Defs.' Mem. at 20-22).

### 1.  Document Request No. 1

Document Request No. 1 seeks "all documents previously requested of the Plaintiff by the Defendants in prior requests to produce during the litigation in the within action."  (Pl.'s

Mem. at 18). GEICO seeks to strike Request No. 1 as duplicative of the request set out in defendants' Rule 34 document request. GEICO represents that it has produced the entirety of its investigative file and has produced the claims files as well. (Pl.'s Mem. at 18).

Based on GEICO's representation that it has already produced all responsive documents, the Court grants the motion for a protective order as to this request and finds that it is moot.


2. <u>Document Request Nos. 2 and 3</u>

GEICO objects to defendants' second and third document requests which seek all documents evidencing GEICO's policies, practices and procedures for a) payment and/or nonpayment of No-Fault bills for DME (Request No. 2), and for b) the review of No-Fault bills for DME (Request No. 3). GEICO objects on grounds of overbreadth, vagueness and relevance, noting that it has already produced all the claims files relating to Lenex's claims along with the investigation files relating to Lenex. (Pl.'s Mem. at 19). To the extent that defendants are seeking information relating to policies and procedures for processing claims from other providers, GEICO objects on the grounds that there may be different procedures in place that have nothing to do with the issues in this case, depending on the various DME at issue, and the time period at issue. (<u>Id.</u>) GEICO suggests that if defendants can articulate a reason for such documents after conducting the 30(b)(6) deposition on this issue, then defendants can renew their demand. (<u>Id.</u>)

Although defendants were previously given the opportunity to meet and confer and narrow their requests, but chose not to do so, if defendants agree to narrow the request to the policies utilized by GEICO during the period covered by this lawsuit, the Court will Order GEICO to produce such information prior to the 30(b)(6) deposition.

### 3. Document Request No. 4

In their fourth request for documents, defendants seek production of all documents evidencing "Plaintiff' positions regarding the propriety of the Defendants' No-Fault bills. . . ." GEICO objects on several grounds, including that the request seeks work product and information regarding experts with whom counsel may have consulted regarding the allegations in the Complaint. (Pl.'s Mem. at 20). GEICO further claims that it has produced "voluminous claim files and investigation files that contain the documents" sought in this request. (Id.)

To the extent that GEICO is withholding documents based on privilege or based on an expert's evaluation given to counsel, GEICO is directed to 1) prepare a privilege log detailing the documents being withheld on privilege grounds; and 2) indicate that, apart from these privileged items and documents prepared by experts, all other responsive documents have been provided.

### 4. Document Request No. 5

Defendants' fifth request seeks production of documents evidencing the plaintiff' investigation of the defendants. Plaintiff objects, noting that this request is duplicative of one of defendants' Rule 34 requests, and asserts that GEICO has produced the entirety of its investigative files. (Pl.'s Mem. at 21). Given GEICO's representation that it has produced the entirety of these files, the request is moot. (See discussion supra, at 15).

### 5. Document Request Nos. 6 and 7

Defendants' Request Nos. 6 and 7 seek production of GEICO's tax returns and reinsurance policies. As discussed supra, this Court has already found that these documents are

not relevant to the claims in this case and not proportional to the needs of the case. Thus, the Court grants GEICO's protective order insofar as it seeks to strike Document Request Nos. 6 and 7.

6. Document Request No. 8

GEICO seeks a protective order striking the defendants' eighth document request, which seeks "[a]ll records of lawsuits or arbitrations in which the Plaintiff litigated or arbitrated bills for the same medical supplies or [DME] at issue in this case." GEICO argues that this request is overly broad and unduly burdensome and seeks records without any temporal or geographic limitation. (Pl.'s Mem. at 22). GEICO also contends that these files are irrelevant because this case seeks to recover voluntary payments made to Lenex, not payments made after litigation or arbitration. (Id.) Moreover, GEICO represents that it has produced the records of any lawsuits or arbitrations involving Lenex and that these were included in the claims files. Given that it is unclear from defendants' request what more they are seeking beyond what has already been provided, the Court grants GEICO's motion for a protective order.

D. GEICO's Letter Motion to Quash

1. Legal Standard

A motion to quash a subpoena is "entrusted to the sound discretion of the district court." In re Fitch, Inc., 330 F.3d 104, 108 (2d Cir. 2003) (quoting United States v. Sanders, 211 F.3d 711, 720 (2d Cir. 2000)); Ehrlich v. Incorporated Vill. of Sea Cliff, No. 04 CV 4025, 2007 WL 1593211, at *2 (E.D.N.Y. May 31, 2007). The party moving to quash a subpoena has the burden of establishing "that the information that is the subject of the subpoena is not discoverable." de

<u>Venustas v. Venustas Int'l, LLC</u>, No. 07 CV 4530, 2008 WL 619028, at *2 (S.D.N.Y. Mar. 5, 2008) (citing <u>Concord Boat Corp. v. Brunswick Corp.</u>, 169 F.R.D. 44, 48 (S.D.N.Y. 1996)).

2. <u>Analysis</u>

By letter dated January 3, 2018, GEICO moves to quash two subpoenas filed by defendants that seek to depose two non-party witnesses, Louis Caniglia, Jr. and Louis Caniglia, Sr.  (1/3/18 Mot.)  GEICO notes that at the time the Caniglias were served with these subpoenas, defendants also served Theresa Koscik with a subpoena to testify as well.  GEICO originally agreed to produce Caniglia Sr. and Koscik based on the understanding that they both were involved in investigating the claims in this case.  (<u>Id.</u>)  However, GEICO later determined that Caniglia Sr. had no involvement in investigating the services rendered by any of the defendants and he has a submitted a sworn affidavit stating such.  (<u>Id.</u> at 2; <u>id.</u>, Ex. B[10]).

GEICO contends that these subpoenas are simply a "back-door attempt by Defendants to improperly seek information that was previously requested in counsel's Fed. R. Civ. P. 30(b)(6) Notice" addressed above.  (<u>Id.</u> at 1).  GEICO also contends that the information is "completely irrelevant" to this case in that defendants seek to question the two witnesses about the lawsuit in which investigators claim they were misclassified as exempt employees under the FLSA.  (<u>Id.</u>)  (<u>See</u> discussion <u>supra</u>, at 9-10).  Plaintiff contends that not only is that lawsuit irrelevant to the claims at issue here, but neither of the Caniglias were named as plaintiffs in that case; they simply opted into the collective action.  (<u>Id.</u>)

Moreover, to the extent that defendants have argued that "they are entitled to conduct [these] depositions because [the witnesses] are father and son and because GEICO's Complaint

---

[10] Exhibit B, attached to plaintiff' 1/3/18 motion, is Louis Caniglia, Sr.'s Affidavit, dated December 29, 2017.

alleges that father and son, Alexander Blantz and Igal Blantz, conspired to commit fraud"
GEICO argues that this is "ridiculous." (<u>Id.</u> at 2).

The Court agrees and finds that in the absence of any indication that either of the
Caniglias had any involvement in investigating the claims at issue here, their testimony is
irrelevant and will not lead to the discovery of admissible evidence.   As described above, their
involvement in a wholly unrelated claim seeking wages under the FLSA does not provide a basis
for subjecting them to depositions.  (<u>See</u> Defs.' 1/6/18 Resp.[11]) (arguing that "there is no
escaping the fact that both Louis Canaglia, Jr., and Louis Canaglia, Sr. have sued (via a consent
form) GEICO . . . and in so doing, they have both joined in alleging that GEICO has willfully,
and recklessly conducted itself "in bad faith" . . . ).

 The Court finds that the subpoenas are harassing and unwarranted, and, accordingly,
grants the motion to quash.  To the extent that GEICO seeks sanctions in the form of counsel
fees and costs associated with this letter motion, the Court denies the request at this time but
notes that any further attempts to subpoena witnesses whose only involvement is in relation to
the FLSA action in Maryland may result in the imposition of sanctions.


E.  <u>GEICO's Motion to Compel Financial Records</u>

By letter dated January 26, 2018, GEICO moves to compel defendants to produce certain
financial records in connection with GEICO's request for all documents relevant to the fraud and
RICO enterprise alleged in the Complaint.  (1/26/18 Ltr[12] at 1).  Specifically, plaintiff requests:
1) bank records for any account held by A. Blantz and I. Blantz from January 2014 to the

---

[11] Citations to "Defs.' 1/6/18 Resp." refer to defendants' Response in Opposition re Letter
Motion to Quash Subpoena, filed on January 6, 2018.
[12] Citations to "1/26/18 Ltr" refer to plaintiff' letter motion to compel financial documents, filed
on January 26, 2018.

present, including checking, savings and/or money market accounts; 2) Federal, State and New York City income tax returns for A. Blantz and I. Blantz; 3) Federal, State and New York City income tax returns for Lenex and Gala; and 4) Federal, State and New York City quarterly payroll tax returns for Lenex and Gala. (Id. at 1-2).

Plaintiff contends that these records are relevant to demonstrate that the "Wholesale Defendants" (I. Blantz and Gala) misrepresented the nature of and true acquisition costs of the DME to the "Retail Defendants" (Alexander Blantz and Lenex), and that Alexander Blantz turned much of the monies paid by the insurance company into cash by funneling it through the Wholesale Defendants and then back to Alexander Blantz and his wife through small advances and payments using a sham line of credit with Bank of America. (Id. at 2). Plaintiff argues that these records are exactly the type of records courts have found relevant when there are similar no-fault fraud schemes involving transactions that could be used to conceal assets or income. (Id. at 2 (citing State Farm Mut. Auto. Ins. Co. v. Fayda, No. 14 CV 9792, 2015 WL 7871037 (S.D.N.Y. Dec. 3, 2015); State Farm Mut. Auto. Ins. Co. v. McGee, No. 10 CV 3848, 2012 U.S. Dist. LEXIS 188346 (E.D.N.Y. Feb. 21, 2012); Allstate Ins. Co. v. Elzanaty, No. 11 CV 3862, 2012 U.S. Dist. LEXIS 171962 (E.D.N.Y. 2012)). Plaintiff contends that the personal tax returns and bank records are relevant to determine how payments among the owners of Lenex and Gala were treated; whether the companies were legitimately operated as genuine retailer/wholesaler; and how the line of credit was classified by Alexander Blantz and Igal Blantz. (Id.)

Defendants oppose plaintiff' motion to compel, arguing that the request for tax records is "palpably improper" and "bear no connection to this action." (Defs.' 1/30/18 Resp.[13] at 1). Defendants contend that although plaintiff allege that defendants took kickbacks, plaintiff' own

---

[13] Citations to "Defs.' 1/30/18 Resp." refer to defendants' opposition to plaintiff' motion to compel, filed on January 30, 2018.

investigator made no findings of fraud against the defendants, nor did the SIU Department find any evidence of kickbacks. (Id. at 1-2). Moreover, defendants argue that the requests for tax records is overly broad and the information could have been obtained during depositions or interrogatory demands. (Id. at 2). Defendants further argue that plaintiff have not discovered any evidence of "insurance monies" from the line of credit despite having complete access to the defendants' bank records. (Id.)

In its Reply letter, dated February 2, 2018, GEICO disputes the defendants' characterization of the evidence, claiming that "it is undisputed that Alexander Blantz turned much of the insurance company monies to the Wholesale Defendants, which monies were then funneled back to Alexander Blantz, . . . ." (Pl.'s 2/2/18 Reply[14] at 2). Plaintiff contends that the income tax and payroll tax returns will demonstrate how the defendants treated the financial transactions among themselves, whether the relationship between the Retail and the Wholesale Defendants was a sham, and whether Gala had a legitimate business apart from serving as a conduit for inflated charges and kickbacks with the clinics. (Id.)[15]

Finally, to the extent that defendants argue that the financial records are sensitive or quasi-privileged, plaintiff contends that there is a confidentiality agreement in place and that the information is not quasi-privileged. (Id. at 4) (citing State Farm v. Fayda, 2015 WL 7871037, at *5).[16]

_____

[14] Citations to "Pl.'s 2/2/18 Reply" refer to plaintiff' 2/2/18 Reply to defendants' opposition to plaintiff' motion, filed by plaintiff on February 2, 2018.

[15] The parties spend much of their arguments in these motions and their responses discussing the merits of the case, especially in regard to the responsibilities and findings of GEICO'S claim department. For example, plaintiff and defendants argue about the roles and testimony of investigator Theresa Sarlo and Dr. Shaikh Ahmed. The Court agrees with plaintiff that this discussion – which bears on the credibility of witnesses in the case – is irrelevant to GEICO's demand for financial records. (See Pl.'s 2/2/18 Reply; Defendant's letter request to submit a Sur-Reply, dated February 2, 2018 "Def.'s 2/2/18 Ltr").

[16] By letter dated February 2, 2018, defendants filed a letter request ("Def.'s 2/2/18 Ltr") to submit a Sur-Reply in which defendants: 1) argue that contrary to plaintiff's representation in its

Courts are generally reluctant to order the production of personal financial documents and have imposed a heightened standard for the discovery of tax returns. See Chen v. Republic Rest. Corp., No. 07 CV 3307, 2008 WL 793686 at *2 (S.D.N.Y. Mar. 26, 2008) (citing Smith v. Bader, 83 F.R.D. 437, 438 (S.D.N.Y. 1979) (holding that "[a]lthough tax returns are not privileged documents, Court[s] are reluctant to order their discovery in part because of the 'private nature of the sensitive information contained therein, and in part from [sic] the public interest in encouraging the filing by taxpayers of complete and accurate returns'").

Accordingly, a party seeking to compel production of tax returns in civil cases must meet a two-part showing that: "(1) the returns must be relevant to the subject matter of the action and (2) there must be a compelling need for the returns because the information is not 'otherwise readily obtainable.'" Carmody v. Village of Rockville Centre, No. 05 CV 4907, 2007 WL 2042807 at *2 (E.D.N.Y. July 13, 2007) (citing United States v. Bonanno Family of La Cosa Nostra, 119 F.R.D. 625, 627 (E .D.N.Y. 1988)).

The Court finds that plaintiff have satisfied their burden in demonstrating the relevance of the financial information sought. The defendants have not attempted to demonstrate that there are alternative sources for the information or that the protective order is not sufficient to safeguard against private information that might be elicited through this discovery. See, e.g.,

---

February 2, 2018 letter, Investigator Sarlo testified in another matter that "the main duty of GEICO's SIU investigators is to 'determine if there is fraud or not;'" 2) dispute the allegation that A. Blantz "turned much of the insurance company monies into cash;'" 3) reargue the issue of Dr. Ahmed's affidavit; 4) contend that plaintiff misrepresents that the Deposition Transcripts of Sarlo and Ahmed are "unverified;" 5) claim that plaintiff misrepresents the facts as to Dr. Ahmed's failure to report the fraud; and 6) maintain that plaintiff misrepresents that the "evidence to date demonstrates the DME defendants did. . . perpetrate and participate in a complex scheme to defraud GEICO." (Defs.' 2/2/18 Ltr). The Court does not typically permit sur-replies. Additionally, the Court notes that, as described supra note 15, the defendants' arguments relate to the merits of this case – not whether or not the information sought is discoverable. Thus, defendants' request to submit a sur-reply as to this issue is denied.

State Farm v. Fayda, 2015 WL 7871037, at *5 (ordering production of financial documents when "the [] defendants have not attempted to show that there are alternative sources for the information.")  Accordingly, the Court finds that the tax returns and requested financial information is relevant, and production of the documents is proportional to the needs of this case.

      F.  GEICO's February 28, 2018 Motion to Compel

By letter motion dated February 28, 2018, GEICO seeks an Order enforcing a subpoena that plaintiff served upon Moises Mizrahi, the owner of United Yoram Distributors.  (2/28/18 Ltr[17]).  GEICO also seeks an Order of contempt against Mizrahi and an award of counsel fees and costs incurred in this application.  (Id.)

According to GEICO's letter, in the course of discovery, plaintiff obtained bank records indicating that the Wholesale Defendants purchased almost all of its equipment from Mizrahi's company, United Yoram Distributors.  (Id. at 2).  On November 2017, plaintiff noticed the deposition of Mizrahi, and also sought the production of sample DME sold to the Wholesale Defendants.  (Id. at 2; see also id., Ex. A).  Plaintiff represents that Mizrahi did not appear for his deposition, nor has he produced the documents listed in the subpoena within his possession, custody, or control.  (Id. at 3).[18]

Accordingly, the Court Orders Moises Mizrahi to produce the requested sample DME by April 1, 2018, and appear for his deposition on the same day, April 1, 2018.  Failure to comply

---

[17] Citations to 2/28/18 Ltr refer to the letter motion to compel discovery, filed by GEICO on February 28, 2018.

[18] The Court notes that the Court previously So Ordered a subpoena directed at Mizrahi's company, United Yoram.  (See Order, dated August 23, 2017).  The Court additionally notes that as of the date of this Order, defendants have not responded to GEICO's motion to enforce the subpoena issued to Mizrahi.

will result in a recommendation to hold him in contempt and impose monetary sanctions under Rule 37. See, e.g., Fruend v. Weinstein, 2009 WL 4065585 (E.D.N.Y. 2009).

<u>CONCLUSION</u>

Having reviewed the parties' submissions, the Court grants the parties' motions to compel in part, and motion for a protective order in part, with the details discussed above.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
       March 15, 2018

*/s/ Cheryl L. Pollak*
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York